IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Kristian Hunter, | ) | Civil Action No. 8:24-cv-00954-BHH-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Paapa Kwesi Saah Nkrumah and Anderson University, | ) | |
| Defendants.[1] | ) | |

This matter is before the court on the motions for summary judgment of the defendants Paapa Kwesi Saah Nkrumah and Anderson University (the "University") (docs. 112, 126). The plaintiff is proceeding *pro se* in this matter. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district judge.

## I. BACKGROUND

On February 25, 2024, the plaintiff filed a complaint in this court against the defendants (doc. 1). The plaintiff alleges federal question as the basis for subject matter jurisdiction from her claim against the University under Title IX of the Higher Education Act ("HEA"), 20 U.S.C. § 1681 *et seq.* (*id.* at 3, 5, 7; doc. 1-1). She alleges that Nkrumah raped her on January 22, 2022, at the University's campus, while she was a student there (*id.* at 5, 7). At that time, Nkrumah was a fellow student and worked in food services at the University (*id.* at 7; doc. 125-2 at 1, King aff. ¶ 3). She alleges that, as a result of the rape, she became pregnant and became too sick to attend classes (doc. 1 at 7). She contends

---

[1] On December 12, 2025, the district court granted defendant AVI Foodsystems, Inc.'s motion to dismiss and dismissed it as a defendant (doc. 81). Accordingly, this caption reflects the current parties to this action.

that after learning of the alleged rape, the University violated Title IX by discriminating against her based on her sex (doc. 1 at 5). The plaintiff alleges causes of action against Nkrumah for assault, battery, and intentional infliction of emotional distress ("IIED") (*id.* at 5, 7).

On June 13, 2024, Nkrumah filed a motion to dismiss arguing that the plaintiff's complaint failed to state claims for assault, battery, and IIED (doc. 44). On November 22, 2024, the undersigned recommended that the motion be denied (doc. 75), and, on December 12, 2024, the Honorable Bruce Howe Hendricks, United States District Judge, adopted that recommendation and denied Nkrumah's motion to dismiss (doc. 81).

On October 29, 2025, Nkrumah filed a motion for summary judgment (doc. 112). On October 31, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if she failed to respond adequately to the motion (doc. 113). The plaintiff alleged that she received the *Roseboro* order but did not receive a copy of this motion (doc. 115 at 1). Accordingly, the court ordered Nkrumah to re-serve the motion and extended the plaintiff's response deadline until thirty-one days after Nkrumah filed a certificate of service (doc. 117). On December 3, 2025, Nkrumah filed a certificate of service (doc. 120), and the plaintiff timely filed a response to Nkrumah's motion for summary judgment on December 29, 2025 (doc. 124).[2] Nkrumah filed a reply on December 31, 2025 (doc. 129).

---

[2] In her response, the plaintiff requests an order "deferring decision and ordering targeted completion of outstanding discovery necessary to oppose summary judgment" (doc. 124 at 5). However, the discovery deadline was September 25, 2025 (doc. 110). Further, the plaintiff does not specify what discovery is outstanding beyond certain explicit pictures and videos, and she does not explain their relevance (*see* docs. 124, 124-2). Therefore, her request to defer ruling on the motions for summary judgment and re-open discovery should be denied.

On December 29, 2025, the University filed a motion for summary judgment (doc. 126). On December 30, 2025, the plaintiff was again advised of the motion for summary judgment procedure and the possible consequences if she failed to respond adequately to the University's motion (doc. 127). On February 5, 2026, the plaintiff filed a response to the motion for summary judgment (doc. 131), and the University filed a reply on February 12, 2026 (doc. 132). Accordingly, these motions are ripe for review.

## II. FACTS PRESENTED

In the Fall 2021 semester, the plaintiff began her studies at the University (doc. 125-1 at 1, Hunter dep. 9:2–9).[3] During that semester, she began a sexual relationship with Nkrumah (*id.* at 2, 18:1–14). The plaintiff testified that Nkrumah assaulted her around January 23, 2022 (*id.* at 1, 5, 9:13–16, 118:6–10). Nkrumah attested that the encounter was consensual (doc. 112-3 at 1–2, Nkrumah aff. ¶¶ 5, 7). The plaintiff continued to have a sexual relationship with Nkrumah after January 23, 2022 (doc. 112-2 at 5, Hunter dep. 25:9–13). In early February 2022, the plaintiff discovered that she was pregnant (doc. 125-1 at 8, Hunter dep. 123:12–14).

On February 8, 2022, the University's officials learned of the alleged January 23, 2022 assault from another student and discovered the names of those involved on February 9, 2022 (doc. 125-2 at 1, King aff. ¶ 3). Dr. L. Dianne King, the University's Title IX coordinator at the time, started an investigation and met with the plaintiff on February 9, 2022, and again on February 16, 2022 (*id.* at 2, ¶ 4). Dr. King explained the Title IX

---

[3] The plaintiff claims that her deposition transcript is "procedurally unreliable" because she was not "provided" a copy (doc. 124 at 1–2; 124-2 at 1, Hunter decl. ¶ 4). "Rule 30(e), however, requires only that the reporting company make the transcript 'available' for review and/or provide a copy of the transcript upon payment of 'reasonable charges.' It does not require the reporting company to send a copy of the transcript to a party." *Williams v. Kettler Mgmt. Inc.*, C.A. No. CBD-12-1226, 2014 WL 509474, at *3 (D. Md. Feb. 5, 2014) (internal citations omitted). Here, the plaintiff does not allege that she contacted the reporting company to review the transcript or paid for a copy. She also does not deny receiving notice, and, even if she did not receive notice, she could have contacted the reporter. She also does not state what testimony was supposedly transcribed inaccurately. Accordingly, her request to strike her deposition transcript should be denied.

complaint process and encouraged the plaintiff to file a Title IX complaint against Nkrumah, but the plaintiff refused (*id.* at 2, ¶ 5; doc. 125-2 at 14–15). The University issued a "protection order" prohibiting Nkrumah from being "near [the plaintiff's] family" (doc. 124-3 at 2, Harris decl. ¶¶ 10–11). The City of Anderson Police Department conducted a criminal investigation (in cooperation with campus security) resulting in no charges filed (doc. 125-2 at 2, King aff. ¶ 6).

On March 3, 2022, Dr. King offered to meet with the plaintiff to help the plaintiff obtain accommodations for her pregnancy, but the plaintiff medically withdrew from the University for the Spring 2022 semester (doc. 125-2 at 2–3, King aff. ¶ 7; doc. 125-2 at 19–20). The plaintiff testified that she told Dr. King that she "needed class modifications" due to her pregnancy (doc. 112-2 at 6, Hunter dep. 26:9–21), but Dr. King denied that the plaintiff requested accommodations for the Spring 2022 semester (doc. 125-2 at 3, King aff. ¶ 8). The plaintiff testified that the "financial aid director" told her "that nobody wanted a pregnancy on campus and that it wasn't fair to [her] professor," but she "always had plans to leave so that [she] could start over somewhere else" (doc. 125-1 at 16, Hunter dep. 149:17–25).

The plaintiff re-enrolled at the University for the Fall 2022 semester and received accommodations for her pregnancy, including flexible attendance, extended assignment deadlines, and priority class registration (doc. 125-3 at 10–13). The plaintiff voluntarily withdrew for the Spring 2023 semester but praised the University in an email for all the staff had "done for [her] in making the fall semester doable while [she] was pregnant/at home with a newborn" (doc. 125-3 at 15).

### III. APPLICABLE LAW AND ANALYSIS

#### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**B.    Title IX**

Title IX prohibits gender discrimination in educational programs and activities that receive federal financial assistance. 20 U.S.C. § 1681. The plaintiff alleges two types of discrimination under Title IX: sexual harassment by another student and disparate treatment because of her pregnancy (doc. 131 at 2–5).

### 1.    Sexual Harassment

The University claims that it was not "deliberately indifferent" to the plaintiff's claim of sexual assault by Nkrumah because it "promptly and sensitively" investigated the plaintiff's allegations and the plaintiff did not file a Title IX complaint (doc. 125 at 3).  The plaintiff argues that summary judgment should be denied because "questions regarding the adequacy and reasonableness of an institution's response" should be decided by a jury (doc. 131 at 3).

To succeed on a Title IX claim premised on sexual harassment, a plaintiff must establish the following elements: "(1) that the educational institution receives federal funds; (2) that the plaintiff 'was subjected to harassment based on her sex'; (3) that 'the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity'; and (4) that 'there is a basis for imputing liability to the institution.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007)).  "[S]chools may not be held liable under Title IX for the misconduct of their *students*, but only for their '*own* decision to remain idle in the face of known student-on-student harassment . . . .'" *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 75 (4th Cir. 2016) *(*quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999)).  The standard is "deliberate indifference," and "a school will be liable for student-on-student harassment only where its 'response . . . or lack thereof is clearly unreasonable in light of the known circumstances.'" *Id.* at 76–77.

Here, the plaintiff fails to provide sufficient evidence that the University was deliberately indifferent to her rape allegations.  The evidence presented shows that University officials promptly reported the incident to Dr. King after learning of the incident from another student; Dr. King promptly interviewed the plaintiff; and Dr. King encouraged the plaintiff to file a formal Title IX complaint, which she refused to file (doc. 125-2 at 1–2,

King aff. ¶¶ 3–5; 125-2 at 14–15). Although the plaintiff did not file a formal complaint, the City of Anderson Police Department conducted a criminal investigation, in cooperating with the University, with no charges filed (doc. 125-2 at 2, King aff. ¶¶ 5–6). The University also issued a "protection order" that prohibited Nkrumah from coming "near [the plaintiff's] family" (doc. 124-3 at 2, Harris decl. ¶¶ 10–11). The plaintiff provides no argument as to how this response was "clearly unreasonable in light of the known circumstances." *See S.B. ex rel. A.L.*, 819 F.3d 69 at 77.

Based on the evidence presented, no reasonable juror could find that the University was deliberately indifferent to the plaintiff's allegations. Contrary to the plaintiff's argument, summary judgment on her Title IX sexual harassment claim is appropriate. *See Davis*, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law.").

### 2.    Pregnancy

The University argues that the plaintiff withdrew without requesting any pregnancy accommodations for the Spring 2022 semester (doc. 125 at 4). The plaintiff, without citing any record evidence, contends that whether the university discriminated against her because of her pregnancy is an issue of fact and cites 34 C.F.R. § 106.40(b)(1)[4] (doc. 131 at 4). The version of 34 C.F.R. § 106.40(b)(1) (2021) in effect during the Spring 2022 semester made it unlawful for a school to "discriminate against any student, or exclude any student from its education program or activity, including any class or extracurricular activity, on the basis of such student's pregnancy." Such school was

---

[4] The plaintiff's citation to 26 C.F.R. § 106.40(b)(1) appears to be a scrivener's error. She also cites *Pfeiffer v. Marion Cent. Area Sch. Dist.*, 917 F.2d 779, 788 (3d Cir. 1990) (doc. 131 at 4). However, *Pfeiffer* is not relevant because the court found that the school dismissed the student because she had engaged in premarital sexual activity and not because of the pregnancy. 917 F.2d at 784–85.

required to treat pregnancy "in the same manner and under the same policies as any other temporary disability." *Id.* § 106.40(b)(4).  If the school does not have a leave policy for its students or if the student does not otherwise qualify for leave under such a policy, it "shall treat pregnancy . . . as a justification for a leave of absence for so long a period of time as is deemed medically necessary by the student's physician." *Id.* § 106.40(b)(5).

Courts have held that the deliberate indifference standard from *Davis* also applies to non-harassment Title IX claims. *Phillips v. Anderson Cnty. Bd. of Educ.*, C.A. No. 3:06-cv-35, 2006 WL 3759893, at *12 (E.D. Tenn. Dec. 19, 2006) ("[T]he Court believes that if the Sixth Circuit or the Supreme Court were presented with a non-harassment Title IX claim, the holdings of *Gebser* and *Davis* would be applied to this type of claim as well."), *aff'd*, 259 F. App'x 842 (6th Cir. 2008); *Reedy v. California*, C.A. No. 2:21-cv-0223-TLN-CKD (PS), 2022 WL 159029, at *5 (E.D. Cal. Jan. 14, 2022) (applying the "deliberate indifference" standard to a claim that "single mothers receiv[ed] more educational resources than single fathers"), *R&R adopted by* 2022 WL 1811300 (E.D. Cal. June 2, 2022), *aff'd sub nom. Reedy v. Cal. Dep't of Soc. Servs.*, No. 22-16214, 2023 WL 8542625 (9th Cir. Dec. 11, 2023).

Here, the plaintiff has failed to produce sufficient evidence for a reasonable jury to find that the University discriminated against her because of her pregnancy.  The evidence shows that Dr. King emailed the plaintiff on March 3, 2022, offering to meet with her to discuss accommodations for her pregnancy (doc. 125-2 at 19).  While the plaintiff testified that she told Dr. King that she needed class modifications for the Spring 2022 semester (and her mother emailed Dr. King stating that the plaintiff "did not receive any modifications" (doc. 112-2 at 6, Hunter dep. 26:9–21; doc. 131-1 at 4)), the plaintiff does not provide any evidence of the "class modifications" she requested and whether other students requesting temporary disability received those modifications.  There is also no evidence of a University leave policy or whether the plaintiff provided the University with

documentation from her doctor indicating her need for leave or class modification. *See McConaughy v. Univ. of Cincinnati*, C.A. No. 1:08-cv-320-HJW, 2010 WL 6511141, at *12 (S.D. Ohio Sept. 28, 2010) (rejecting a Title IX claim for pregnancy discrimination where the plaintiff "never provided the University with documentation from a physician indicating that she needed medical leave of a specified length of time as a result of her pregnancy loss"), *R&R adopted by* 2011 WL 1459292 (S.D. Ohio Apr. 15, 2011).

Furthermore, the evidence shows that the plaintiff planned to withdraw during the Spring 2022 semester regardless of the accommodations offered. The plaintiff testified that she "always had plans to leave so that [she] could start over somewhere else" (doc. 125-1 at 16, Hunter dep. 149:17–25). Because she planned to leave anyway, the plaintiff fails to link her decision to withdraw from the University to the University's treatment of her after learning of her pregnancy. *See Muro v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.,* C.A. No. 19-10812, 2019 WL 5810308, at *4 (E.D. La. Nov. 7, 2019) ("Because Muro alleges no facts linking her termination to her pregnancy, she has not plausibly alleged that the termination was *because* of her pregnancy or a pregnancy-related condition."). Although the plaintiff testified that the "financial aid director" told her "that nobody wanted a pregnancy on campus" (doc. 125-1 at 16, Hunter dep. 149:17–25), this is contradicted by the accommodations she received for the Fall 2022 semester, including flexible attendance, extended assignment deadlines, and priority class registration (doc. 125-3 at 10–13, 15).

The plaintiff has failed to produce sufficient evidence for a reasonable jury to find that the University discriminated against her because of her pregnancy. Accordingly, her Title IX claims should be dismissed.

## C.    State Law Claims

Nkrumah requests summary judgment on the plaintiff's state law claims for assault, battery, and IIED (doc. 112-1 at 8–13). Should the district judge adopt the

9

undersigned's recommendation and find that the University is entitled to summary judgment on the Title IX claim, only the state law claims will remain. Therefore, it is recommended that the district court decline to exercise supplemental jurisdiction over the plaintiff's state law claims and deny Nkrumah's motion for summary judgment as moot on these claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."); s*ee also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). "With all its federal questions gone, there may be the authority to keep it in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so." *Waybright v. Frederick Cnty, MD*, 528 F.3d 199, 209 (4th Cir. 2008). If the district judge adopts this recommendation, the plaintiff may re-file her remaining claims in state court in accordance with 28 U.S.C. § 1367(d) and state law.

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district court grant the University's motion for summary judgment (doc. 126), decline to exercise supplemental jurisdiction over the remaining state law claims, and deny Nkrumah's motion for summary judgment (doc. 112) as moot. Furthermore, the plaintiff's requests to strike her deposition transcript and re-open discovery should be denied.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

April 24, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).